IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MIGUEL D. TIDWELL, pro se, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-16-421 |
| IMPAQ INTERNATIONAL, LLC, | * | |
| Defendant. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

*Pro se* plaintiff Miguel D. Tidwell filed this action against defendant IMPAQ International, LLC ("IMPAQ") alleging unlawful discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").

Currently pending are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 33) and Defendant's Cross-Motion to Dismiss, or, in the Alternative, for Summary Judgment ("Defendant's Motion") (ECF No. 34). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED. Specifically, Tidwell's claims for violations of the ADA's confidentiality provisions, unlawful suspension, and constructive discharge are DISMISSED, and Summary Judgment is ENTERED in favor of IMPAQ on the claim for failure to provide reasonable accommodation.

1

<u>BACKGROUND</u>

Defendant IMPAQ is a public policy research firm located in Ellicott City, Maryland that provides services to an array of clients throughout the United States. (ECF No. 34-3 at ¶ 2.) Plaintiff Miguel D. Tidwell worked for defendant as an interviewer from May 2006 until October 31, 2014. (ECF No. 2 at 1, 3.) As an interviewer, Tidwell was responsible for administering computer based surveys to respondents over the telephone. (*Id.* at ¶ 3.) Plaintiff alleges that "higher expectations" with respect to his workload were implemented in the survey center in October-November 2013. (ECF No. 2 at 2.) Plaintiff then notified IMPAQ's Human Resources department of his mental disability[1] and glaucoma in order to seek an accommodation—namely, a reduced workload. (*Id.* at 2.) Plaintiff alleges that in response to his request, IMPAQ made a verbal accommodation for Tidwell to follow a productivity goal of seven surveys per hour. (*Id.*) IMPAQ disputes this allegation. (ECF No. 34-1 at 8.)

IMPAQ then requested that Mr. Tidwell supply further information regarding his disability. Tidwell initially supplied a letter he had prepared himself. (ECF No. 34-17.) Plaintiff later supplied a letter from Denise Katz, his treating mental health provider. (ECF No. 34-18.) Ms. Katz sought several accommodations for Mr. Tidwell, including that Mr. Tidwell's productivity goal be reduced from the standard thirteen interviews per hour to seven interviews per hour. (*Id.*) IMPAQ granted several of the accommodations requested, but declined to permit the reduced workload goal of seven interviews per hour. (ECF No. 34-19.) IMPAQ did, however, agree to a productivity goal of ten interviews per hour,

---

[1] Plaintiff does not specifically identify his mental disability.

notwithstanding the fact that all employees operated under a thirteen interviews per hour goal at that time.  (*Id.*; ECF No. 34-11 at ¶3.)

Plaintiff further alleges that at some point in October or November 2013, another employee of defendant, Stephanie Naber, placed a sign on the back of his chair which "indicated that I have a disability…"  (ECF No. 2 at 1.)  The sign stated: "This Chair Is Reserved For Miguel Tidwell For Ergonomic Reasons When Working."  (*Id.* at 3-4.)  Tidwell alleges that "everyone knows the word Ergonomic indicates a disability," and that the sign thus revealed his disability to his coworkers.  Plaintiff alleges that the sign not only identified him as a "Disabled Individual," but also "shared [his] Personal, Private, Confidential information throughout the Company, and made a spectacle of [him]."  (*Id.* at 4.)

Tidwell resigned from his position on October 31, 2014, and subsequently filed a Charge of Discrimination against IMPAQ with the Howard County Office of Human Rights ("OHR") in Columbia, Maryland.  (ECF No. 34-22.)  The Charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  (ECF No. 34-23.)  The OHR concluded that there was "no reasonable cause to believe that [plaintiff] was discriminated against as a result of a disability or perceived disability."  (*Id.* at 10.)  Tidwell sought review with the EEOC, which adopted the findings of the OHR and issued plaintiff a right to sue letter.  (ECF No. 1-1.)  Plaintiff subsequently filed suit in the Circuit Court for Howard County, Maryland, and defendant removed the case to this Court.  (ECF No. 1.)

<u>STANDARDS OF REVIEW</u>

**I.      Motion to Dismiss Pursuant to Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).  A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799.  Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.  "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted).  The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Md. Dept. of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000).

**II.      Motion to Dismiss Pursuant to Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).    The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  While a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such

5

deference. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While federal courts are obliged to liberally construe a *pro se* litigant's claims in applying the above analysis, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotations and citations omitted).   The Fourth Circuit has noted that "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)).

## III.     Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)).   When considering a motion for summary judgment, a judge's function is limited to determining

whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

Liberally construing the *pro se* plaintiff's Complaint, it appears that plaintiff asserts four possible claims against defendant: (1) that IMPAQ failed to provide Mr. Tidwell with a reasonable accommodation under the ADA; (2) that IMPAQ violated the confidentiality provisions of the ADA when it placed a sign on Mr. Tidwell's chair indicating that it was reserved for him for "ergonomic reasons"; (3) that Mr. Tidwell was suspended for two days in violation of the ADA; and (4) that Mr. Tidwell was constructively discharged as the result

of a hostile work environment.  The parties' cross-motions with respect to these claims are addressed in turn below.

## I.      Plaintiff's Motion

Plaintiff's Motion restates the principal allegations set forth in the Complaint—namely, that defendant wrongfully identified him as a "person with limitations" in violation of the ADA.  (ECF No. 33 at 1.)  Plaintiff has not submitted any affidavits or other evidence in support of his motion.[2]  As Plaintiff's Motion fails to demonstrate how he is entitled to judgment as a matter of law, it must be DENIED.

## II.     Defendant's Motion

### A.  Alleged Failure to Provide Reasonable Accommodation

Plaintiff has alleged that IMPAQ violated the ADA by refusing to reduce its production goal for him from thirteen calls per hour—expected of all call center employees—to seven calls per hour.  (ECF No. 2 at 2.)

In support of its Motion for Summary Judgment on this claim, defendant argues that the "EEOC has long taken the position that an employer is not required to lower production standards that are applied uniformly to employees with and without disabilities."  (ECF No. 34-1 at 14.)  Because its production goal was applied to all employees, and as there is no accommodation that IMPAQ could have provided to Mr. Tidwell that would have allowed him to meet that goal, IMPAQ argues, plaintiff is not a "qualified" individual with a disability under the ADA.  (*Id.* at 16.)

---

[2] Even if the Court were to take into consideration the exhibits which plaintiff attached to his Response to Defendant's Motion, plaintiff still fails to prove his entitlement to summary judgment on any of his claims. (ECF No. 36.)

The United States Court of Appeals for the Fourth Circuit has repeatedly held that "in order for a plaintiff to establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position...; and (4) that the [employer] refused to make such accommodations.'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. Fed. Deposit Ins. Corp.,* 257 F.3d 373, 387 n. 11 (4th Cir. 2001)).

In support of its Motion, IMPAQ relies on the deposition testimony of Mr. Tidwell and Mr. Tidwell's mental health care provider, Ms. Katz.  As to the uniform application of the production goal of thirteen calls per hour, plaintiff recognized during his deposition that all IMPAQ call center employees were expected to conduct thirteen interviews per hour. (Tidwell Depo. at 115:8; 139:2-5; ECF No. 34-4.)   On the question of whether any reasonable accommodation could have been provided, plaintiff's mental health care provider testified that she was not aware of any accommodation that IMPAQ could have provided Mr. Tidwell to allow him to meet its thirteen calls per hour production goal.  (Katz Depo. at 37:7-13; ECF No. 34-13.)

Plaintiff has produced no evidence to contradict this testimony.  *See* ECF Nos. 33, 36, 38.   Nor is the reduction of an employer's production standards a reasonable accommodation under the ADA.  *Shin v. Univ. of Maryland Med. Sys. Corp.*, 369 F. App'x 472, 482 (4th Cir. 2010) (request to treat only a reduced volume of patients was not a reasonable accommodation).   *See also  Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1125 (10th Cir.  1995) ("An

accommodation that would result in other employees having to worker [*sic*] harder or longer hours is not required."). Accordingly, defendant is entitled to summary judgment as to plaintiff's claim for failure to provide reasonable accommodation.

### B. Alleged Violation of the ADA's Confidentiality Provisions

At the heart of Tidwell's Complaint and Motion is his contention that IMPAQ violated the ADA and disclosed his mental disability by placing a sign on his chair at work. (ECF No. 2 at 1.) The sign stated that the chair was "Reserved for Miguel Tidwell for Ergonomic Reasons When Working." Plaintiff alleges that "[e]veryone knows the word Ergonomic indicates a Disability," and that the posting of the sign not only identified him as a "Disabled Individual," but also "shared [his] Personal, Private, Confidential information throughout the Company, and made a spectacle of [him]." (ECF No. 2 at 4.)

Defendant moves to dismiss and/or for summary judgment on this count of plaintiff's Complaint, arguing that "there is no basis for the assertion that every person using an ergonomic chair or other device has a disability or would be perceived as having a disability." (ECF No. 34-1 at 18.) Defendant points to Merriam-Webster's definition of "ergonomic" as "a science that deals with designing and arranging things so that people can use them easily and safely." (*Id.* at 19.) This definition, defendant argues, renders plaintiff's allegation insufficient to state a claim.

In his opposition to Defendant's Motion, Tidwell cites a substantially similar dictionary definition of the term "ergonomic," and, notably, submits a portion of the Howard County Office of Human Rights' ("OHR") findings on this issue. (ECF No. 36.) The OHR's findings state, in pertinent part, that: "OHR believes that there is insufficient

evidence to conclude that a sign that states that a chair was reserved for [plaintiff] for ergonomic reasons would lead a reasonable person to believe that [plaintiff] had a disability." (ECF No. 36-8.)

Even without expressly following OHR's conclusion, this Court similarly concludes that the designation of plaintiff's chair as "ergonomic" fails to plausibly allege that defendant disclosed plaintiff's alleged mental disability and/or glaucoma in violation of the ADA.[3] Widely accepted dictionary definitions of the word "ergonomic," as both parties recognize, may indicate, at best, a tangential relationship to certain physical limitations or impairments—none of which are alleged in this case.  Absent any additional, contextual allegations which suggest an alternative meaning of the word, this Court cannot find that plaintiff states a plausible claim for an ADA violation based on the labeling of his chair as reserved for "ergonomic reasons."  Accordingly, plaintiff's claim that defendant disclosed his mental disability in violation of the ADA must be dismissed.

## C.  Unlawful Suspension and Constructive Discharge Claims

Plaintiff has alleged that he was suspended for two days in June 2014 and that, ultimately, he was forced to resign from his employment at IMPAQ on account of the hostile work environment which had developed there.  (ECF No. 2.)

Defendant moves to dismiss these claims pursuant to Rule 12(b)(1) on the basis that plaintiff failed to include these allegations in his Charge of Discrimination and, thus, has failed to exhaust the available administrative remedies.  (ECF No. 34-1 at 21.)

---

[3] To the extent that plaintiff's claim could be construed instead under a theory of intentional infliction of emotional distress, the Complaint fails to allege conduct sufficiently extreme or outrageous so as to state a plausible claim for relief.  *See Mixter v. Farmer*, 215 Md. App. 536, 548, 81 A.3d 631, 637 (2013).

The ADA requires that a plaintiff first file a charge of discrimination with the EEOC and exhaust the EEOC's administrative process in order to file a civil action arising under the statute. 42 U.S.C. § 12117(a). *See Michaels v. Cont'l Reality Corp.*, RDB-10-1998, 2011 WL 4479697, at *5 (D. Md. Sept. 26, 2011), *aff'd sub nom. Michaels v. Cont'l Realty Corp.*, 469 F. App'x 209 (4th Cir. 2012). A court should dismiss such a discrimination lawsuit if the plaintiff has not exhausted required administrative remedies before bringing suit. *Chacko v. Patuxent Institution,* 429 F.3d 505, 508–09 (4th Cir. 2005). The dual purposes of this requirement are to put the charged party on notice of the claims against it and to allow the EEOC to attempt voluntary conciliation with the party of the allegations. *Causey v. Balog,* 162 F.3d 795, 800 (4th Cir. 1998). To fulfill this obligation, a plaintiff must set forth in his EEOC grievance all factual allegations that he anticipates raising. *Chacko,* 429 F.3d at 509. Because lawyers do not typically complete the administrative charges, courts tend to construe them liberally. *Alvarado v. Bd. of Trs. Of Montgomery Cmty. Coll.,* 848 F.2d 457, 460 (4th Cir.1988).

Plaintiff's Charge of Discrimination includes four allegations: (1) that plaintiff was required to handle at least thirteen calls per hour; (2) that plaintiff complained to his manager that he could not handle thirteen calls per hour on account of his disability; (3) that the company provided accommodation for his disability, but also gave plaintiff a chair with a sign on it indicating his disability; and (4) that plaintiff was notified that his disability accommodations were being rescinded. (ECF No. 34-22.) Nowhere in the Charge does plaintiff refer to his suspension, his constructive discharge, or to a hostile work environment. (*Id.*) Thus, because these actions exceed the scope of plaintiff's Charge of Discrimination,

he has failed to exhaust his administrative remedies, and this Court is without jurisdiction to hear these claims.  *See Banhi v. Papa John's USA, Inc.*, RWT-12-0665, 2013 WL 3788573, at *4 (D. Md. July 18, 2013), *aff'd,* 583 F. App'x 268 (4th Cir. 2014) ("If the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.") (internal citations omitted).  Accordingly, plaintiff's claims for unlawful suspension and constructive discharge in violation of the ADA must be dismissed.

<u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.   Specifically, Tidwell's claims for violations of the ADA's confidentiality provisions, unlawful suspension, and constructive discharge are DISMISSED, and Summary Judgment is ENTERED in favor of IMPAQ on the claim for failure to provide reasonable accommodation.

A separate Order follows.

Dated: January 12, 2016                          _____/s/_____
                                                  Richard D. Bennett
                                                  United States District Judge